# EXHIBIT J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------------X

LOUIE'S    SEAFOOD    RESTAURANT,
LLC, MARTIN PICONE, and MICHAEL
GUINNANE,

INDEX NO. 5532/2015

                                          Plaintiffs,

                                                            **SUMMONS**

-against-

Plaintiffs' Business Address
395 Main Street
Port Washington, NY 11050

JEFFREY BROWN, LENARD LEEDS, and
LEEDS BROWN LAW P.C.,

Venue is proper pursuant to CPLR § 503, inasmuch
as Defendants' offices are located in
Nassau, State of New York

**RECEIVED**

                                          Defendants.
--------------------------------------------------------------------X

JUN 18 2015

**NASSAU COUNTY**
**COUNTY CLERK'S OFFICE**

To The Above-Named Defendants:

    **YOU ARE HEREBY SUMMONED** and required to answer the complaint in this action
and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve
a notice of appearance, upon the Plaintiffs' Attorney(s) within twenty (20) days after the service
of this summons, exclusive of the day of service (or within thirty (30) days after the service is
complete if this summons is not personally delivered to you within the State of New York). In
the event you fail to appear or answer, judgment will be taken against you by default for the
relief demanded herein. The action will be heard at the Courthouse of the Supreme Court, in
Nassau County. The action will be heard at the Courthouse of the Supreme Court, in Nassau
County, located at 100 Supreme Court Drive, Mineola, New York 11501

Dated:        Carle Place, New York
              June 16, 2015

                                          THE SCHER LAW FIRM, LLP
                                          Attorneys for the Plaintiffs

                                          Austin Graff, Esq.
                                          One Old Country Road, Suite 385
                                          Carle Place, NY 11514
                                          (516) 746-5040

TO:    JEFFREY BROWN                       LEEDS BROWN LAW P.C.
       Leeds Brown Law, P.C.               Leeds Brown Law, P.C.
       One Old Country Road, Suite 347     One Old Country Road, Suite 347
       Carle Place, NY 11514               Carle Place, NY 11514

       LENARD LEEDS
       Leeds Brown Law, P.C.
       One Old Country Road, Suite 347
       Carle Place, NY 11514

G. Louie's Seafood Restaurant Litigation/Action Against Brown/Pleadings/Summons.docx

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-------------------------------------------------------------------X

LOUIE'S   SEAFOOD   RESTAURANT,
LLC, MARTIN  PICONE, and  MICHAEL
GUINNANE,

                       Plaintiffs,

               -against-

JEFFREY BROWN, LENARD LEEDS, and
LEEDS BROWN LAW P.C.,

                     Defendants.

-------------------------------------------------------------------X

INDEX NO. 5532/2015

**VERIFIED COMPLAINT**

**RECEIVED**

JUN 10 2015

**NASSAU COUNTY
COUNTY CLERK'S OFFICE**

     The Plaintiffs LOUIE'S SEAFOOD RESTAURANT, LLC, MARTIN PICONE, and MICHAEL GUINNANE (collectively referred to as "Plaintiffs"), by their attorneys THE SCHER LAW FIRM, LLP, allege the following as and for their Verified Complaint against the Defendant.

## I.    JURISDICTION, PARTIES AND VENUE

    1.    The Plaintiff LOUIE'S SEAFOOD RESTAURANT, LLC ("Louie's") is a domestic limited liability company, with its principal place of business in the County of Nassau, State of New York.

    2.    The Plaintiff MARTIN PICONE ("Picone") is an individual with his residence and domicile in the County of Nassau, State of New York.

    3.    The Plaintiff MICHAEL GUINNANE ("Guinnane") is an individual with his residence and domicile in the County of Nassau, State of New York.

    4.    Upon information and belief, the Defendant JEFFREY BROWN ("Brown") is an individual with his principal place of business, residence and domicile in the County of Nassau, State of New York.

1

5.     Upon information and belief, the Defendant LENARD LEEDS ("Leeds") is an individual with his principal place of business, residence and domicile in the County of Nassau, State of New York.

6.     Upon information and belief, the Defendant LEEDS BROWN LAW, P.C. ("P.C.") is a domestic professional corporation with its principal place of business in the County of Nassau, State of New York.

7.     Jurisdiction of this Court is proper pursuant to CPLR § 301.

8.     Venue in this Court is appropriate pursuant to CPLR § 503(a).

## II.    FACTS

9.     Brown is an attorney licensed to practice law in New York State.

10.    Leeds is an attorney licensed to practice law in New York State.

11.    P.C. is a law firm.

12.    Brown is a partner in P.C.

13.    Leeds is a partner in P.C.

### A.    Mendez Action

14.    On June 27, 2012 P.C. commenced an Action against Louie's on behalf of non-party Oscar Mendez ("Mendez") concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See,* **Exhibit A,** a copy of the Complaint filed by P.C. on behalf of Mendez ("Mendez Action").

2

15. On June 27, 2012 Brown commenced the Mendez Action against Louie's on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

16. On June 27, 2012 Leeds commenced the Mendez Action against Louie's on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

17. On June 27, 2012 P.C. commenced the Mendez Action against Picone on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

18. On June 27, 2012 Brown commenced the Mendez Action against Picone on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

19. On June 27, 2012 Leeds commenced the Mendez Action against Picone on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

20. On June 27, 2012 P.C. commenced the Mendez Action against Guinnane on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

21. On June 27, 2012 Brown commenced the Mendez Action against Guinnane on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

22. On June 27, 2012 Leeds commenced the Mendez Action against Guinnane on behalf of Mendez concerning claims of unpaid wages pursuant to the Fair Labor Standards Act and N.Y. Labor Law. *See*, **Exhibit A**.

I.    P.C.'s Failure To Maintain Escrow Provisions Of Settlement Agreement

23.    During the course of litigation, Louie's decided to settle the Mendez Action.

24.    Louie's issued two settlement checks as required by the settlement agreement, one for Mendez to pay him the settlement sum and one for the Leeds Law Firm's legal fees. *See,* **Exhibit B,** a copy of the checks issued in settlement of the 2012 Action.

25.    According to the settlement agreement, those checks were not to be released until the Court approved of the settlement agreement. *See,* **Exhibit C,** a copy of the settlement agreement, at ¶ 3(b).

26.    Despite the clear terms of the settlement agreement, the checks were not held by P.C. pending judicial approval.

27.    Judicial approval was not obtained until seven months after the checks were deposited. *Compare,* **Exhibit D,** a copy of the Docket Report at last entry *with* **Exhibit B.**

28.    The checks were released by P.C. to Mendez and deposited in January 2013. *See,* **Exhibit B.**

29.    The checks were deposited into P.C.'s operating account in January 2013. *See,* **Exhibit B.**

30.    The Court in the Mendez Action denied granting approval of the settlement agreement on separate occasions because the parties negotiated for a confidentiality clause in the agreement. *See,* **Exhibit E,** a copy of the January 2013 Court Order. *See* **Exhibit F,** a copy of the May 2013 Order.

31.    When the Court in the Mendez Action denied the settlement agreement, the Louie's demanded their money back.

4

32.   P.C. refused to refund the money.

33.   The settlement agreement was finally approved in August 2013. *See,* **Exhibit D**.

34.   P.C. was a signatory to the settlement agreement. *See,* **Exhibit C**.

2.   <u>P.C.'s Material Misrepresentation Of Facts In The Settlement Agreement</u>

35.   In the settlement agreement P.C. affirmatively represented that "neither the firm nor any attorneys affiliated with the firm (individually, together or in conjunction with other attorneys) represent any other employee or former employee of the Company in connection with an employment-related issue against the Company or Releasees." **Exhibit C**, at ¶ 6.

36.   Just six days after the Court rejected the settlement agreement on May 1, 2013 (**Exhibit F**), P.C. filed three Consents To Join Collective Action To Recover Unpaid Wages on behalf of Kellie Shea ("Shea") (**Exhibit D**), Michael Spagnuoli ("Spagnuoli") (**Exhibit D**) and Joseph Veselak ("Veselak") (**Exhibit D**).

37.   The filings were made approximately four months after P.C. released to Mendez the settlement check and P.C. deposited its money received from Louie's to settle the Mendez Action. *See,* **Exhibit B**.

38.   Despite the language in the settlement agreement, P.C. made a material misrepresentation regarding their current representation of former employees of Louie's at the time of the Court approval of the settlement agreement.

39.   This material misrepresentation induced Louie's into settling the Mendez Action.

40.   This material misrepresentation induced Picone into settling the Mendez Action.

41.     This material misrepresentation induced Guinnane into settling the Mendez Action.

42.     If Louie's knew that P.C. represented other former employees, it would never have settled the case nor paid any money to P.C. or Mendez.

43.     If Picone knew that P.C. represented other former Louie's employees, he would never have settled the case nor paid any money to P.C. or Mendez.

44.     If Guinnane knew that P.C. represented other former Louie's employees, he would never have settled the case nor paid any money to P.C. or Mendez.

### 3.    Solicitation Of Potential Class Members Against Louie's

45.     Shea wrote on Facebook to Spyro Karabelas ("Karabelas") (who, on Facebook says his name is Spyro Agenew), Louie's former employee stating:

> I wanted to let you know that there is a class action law suit against Louies for non payment of overtime. I was contacted by a law firm. We are all owed money. Contact me if youre interested. If you can think of anyone who was a busboy or worked in the kitchen and did not receive overtime pay please let them know.
>
> Talk to you soon... Hope all is well.

**Exhibit G**, a copy of the Facebook communication from Shea to Karabelas.

46.     Shea admits in her communications to Karabelas that P.C. contacted her to become part of the Mendez Action. *See,* **Exhibit G**.

47.     Despite the language in the settlement agreement, P.C. made a material misrepresentation regarding their current representation of former employees of Louie's at the time of the execution.

6

44.    The Plaintiffs engaged in a defense to the Prior State Action that they were induced to engage in based upon the justifiable reliance upon the False Diary.

45.    The Plaintiffs engaged in a defense to the Prior Federal Action that they were induced to engage in based upon the justifiable reliance upon the False Diary.

46.    This defense included the expenditure of money for attorneys' fees to defend the Prior State Action.

47.    This defense included the expenditure of money for attorneys' fees to defend the Prior Federal Action.

48.    Because the False Diary was fraudulent, the expenditure of money for attorneys' fees caused the Plaintiffs pecuniary loss.

49.    As a direct consequence of the Defendant's False Diary, the Plaintiffs have been damaged.

50.    Accordingly, the Plaintiffs demand judgment against the Defendant in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages, attorneys' fees, costs, and interest.

## AS AND FOR A SECOND CAUSE OF ACTION
## SOUNDING IN PRIMA FACIE TORT

51.    The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 50 as if fully set forth herein.

52.    The Defendant intentionally inflicted harm against Louie's by publishing the False Diary to Brown.

7

55.     By letter dated March 5, 2013, Leeds notified Louie's of P.C.'s intent to commence litigation against Louie's for Shea's claims of sexual harassment and retaliation. *See,* **Exhibit J,** a copy of the March 5, 2013 letter.

56.     By letter dated March 5, 2013, Leeds notified Picone of P.C.'s intent to commence litigation against Louie's for Shea's claims of sexual harassment and retaliation. *See,* **Exhibit J.**

57.     By letter dated March 5, 2013, Leeds notified Guinnane of P.C.'s intent to commence litigation against Louie's for Shea's claims of sexual harassment and retaliation. *See,* **Exhibit J.**

58.     After the March 5, 2013 letter was received by Louie's, Louie's attorney communicated with Leeds and was told by Leeds that "this one can probably settle for cheap, she's not looking for much."

59.     On October 11, 2013, P.C. commenced an Action with the Nassau County Clerk, venued in the Supreme Court, Nassau County against Louie's for claims of sexual harassment during Shea's employment. *See,* **Exhibit K,** a copy of the Summons and Complaint ("Shea's State Action").

60.     On October 11, 2013, P.C. commenced Shea's State Action with the Nassau County Clerk, venued in the Supreme Court, Nassau County against Picone for claims of sexual harassment during Shea's employment. *See,* **Exhibit K.**

61.     On October 11, 2013, P.C. commenced Shea's State Action with the Nassau County Clerk, venued in the Supreme Court, Nassau County against Guinnane for claims of sexual harassment during Shea's employment. *See,* **Exhibit K.**

62.     On or about July 28, 2014 P.C. disclosed documents in response to the Louie's discovery demands in the Shea State Action.

8

63.    As part of her disclosure in the Shea State Action, P.C. disclosed a purported diary. *See*, **Exhibit L**, a copy of the purported diary ("False Diary").

64.    After Louie's performed due diligence into the False Diary, it was clear that the False Diary contained material false entries.

65.    After Picone performed due diligence into the False Diary, it was clear that the False Diary contained material false entries.

66.    After Guinnane performed due diligence into the False Diary, it was clear that the False Diary contained material false entries.

67.    The False Diary consisted of three books.

68.    One book of the False Diary entries begins on May 31, 2004 and runs through February 13, 2008 ("First Book").

69.    The second book of the False Diary contains entries beginning on February 25, 2008 ("Second Book").

70.    A third book of the False Diary purportedly represented the Defendant's hours, earnings and tips during her employment with Louie's ("Hours/Tip Diary").

71.    The Hours/Tip Diary was disclosed by P.C. in the course of discovery in the Prior Federal Action to purportedly establish the number of hours and amount of tips the Defendant was owed from Louie's.

72.    Through due diligence, Louie's was able to ascertain thirteen specific falsehoods in the False Diary.

73.    Amongst the specific falsehoods, five standout as the most prominent:

9

(1)     The Second Book was first published by the publisher on February 9, 2009 and therefore, the entries in the Second Book dated prior to February 9, 2009 could not have been made contemporaneously with the events. *See,* **Exhibit M**, a copy of the email exchange with Carolina Pad and the attachments.

(2)     On bates-stamped document numbered 269, the Defendant had an entry dated 4/22/14. *See,* **Exhibit N**, a copy of bates-stamped document numbered 269. Both the page before and the page after are "entries" allegedly from 2012. *See,* **Exhibit O**, a copy of bates-stamped documents numbered 268 and 270.

(3)     In an entry on February 8, 2009, the Defendant states that she left work early that day to take her child out for dinner. *See,* **Exhibit P**, a copy of bates-stamped document numbered 220. Yet, her Hours/Tip Diary says she worked eleven hours that day. *See,* **Exhibit Q**, a copy of bates-stamped document numbered 34. These are inconsistent "memories."

(4)     According to historical weather information, on December 19 and 20, 2009 the area was hit with 2 feet of snow. *See,* **Exhibit R**, a copy of historical weather information. The Defendant's Hours/Tip Diary says that she worked 12 hours on December 19, and 11 hours on December 20. In addition, the amount of tips recorded on those days is significantly higher than what she reports in her own Hours/Tip Diary for the non-snow days. *See,* **Exhibit S**, a copy of bates-stamped documents numbered 45 and 46. Shea's hours are impossible because Louie's would not be open for business since no customers would be coming in to the restaurant with two feet snow falling.

(5)     In the Defendant's September 2, 2009 diary entry, the Defendant writes that Picone told her that if she had sex with him, he ___ pay for her health insurance. *See,* **Exhibit T**, a copy of bates-stamp, documents numbered 239 and 240. Picone was in Aruba on September 2, 2009. Picone's Hyatt account shows that he was in Aruba from August 27, 2009 through September 2, 2009. *See,* **Exhibit U**, a copy of bates-stamped document numbered LOUIE'S0490. Not only does his Hyatt Statement say it, but his United States passport shows that he was in Aruba for that period of time. *See,* **Exhibit V**, a copy of bates-stamped document numbered LOUIE'S0491 and LOUIE'S0492.

74.     By letter dated January 30, 2015, Louie's placed b___ . on actual knowledge of the thirteen material falsehoods in the False Diary. *See,* Exhibit ___ a copy of the January 30, 2015 letter ("Actual Knowledge Letter").

75.    By letter dated January 30, 2015, Picone placed Brown on actual knowledge of the thirteen material falsehoods in the False Diary. *See,* **Exhibit W.**

76.    By letter dated January 30, 2015, Guinnane placed Brown on actual knowledge of the thirteen material falsehoods in the False Diary. *See,* **Exhibit W.**

77.    By letter dated January 30, 2015, Louie's placed P.C. on actual knowledge of the thirteen material falsehoods in the False Diary. *See,* **Exhibit W.**

78.    By letter dated January 30, 2015, Picone placed P.C. on actual knowledge of the thirteen material falsehoods in the False Diary. *See,* **Exhibit W.**

79.    By letter dated January 30, 2015, Guinnane placed P.C. on actual knowledge of the thirteen material falsehoods in the False Diary. *See,* **Exhibit W.**

80.    Brown did not respond to the Actual Knowledge Letter.

81.    P.C. did not respond to the Actual Knowledge Letter.

82.    Consequently, Louie's filed a Motion in the Prior State Action seeking dismissal of Shea's State Action based upon fraud upon the Court. *See,* **Exhibit X,** a copy of the Motion.

83.    Consequently, Picone filed a Motion in the Prior State Action seeking dismissal of Shea's State Action based upon fraud upon the Court. *See,* **Exhibit X.**

84.    Consequently, Guinnane filed a Motion in the Prior State Action seeking dismissal of Shea's State Action based upon fraud upon the Court. *See,* **Exhibit X.**

85.    Recognizing that the False Diary was fraud upon the Court, Brown dismissed the Prior State Action with prejudice. *See,* **Exhibit Y,** a copy of the dismissal with prejudice.

11

86.     Recognizing that the False Diary was fraud upon the Court, P.C. dismissed the Prior State Action with prejudice. *See,* **Exhibit Y.**

**D.      P.C.'s Retainer With Shea Instructed Shea To Destroy Evidence**

87.     During discovery in Shea's State Action, P.C. disclosed that Shea was previously a debtor in bankruptcy. *See,* **Exhibit AA,** a copy of the document disclosed in discovery.

88.     Upon reviewing the discovery response from P.C. in Shea's State Action, Louie's reviewed Shea's Petition filed in the Bankruptcy Court. *See,* **Exhibit BB,** a copy of Shea's Petition filed with the Bankruptcy Court.

89.     Shea's Petition in the Bankruptcy Court failed to list as an asset the claims asserted in Shea's State Action. *See,* **Exhibit BB.**

90.     Shea's Petition in the Bankruptcy Court failed to list as an asset the claims asserted in Prior Federal Action. *See,* **Exhibit BB.**

91.     Upon reviewing Shea's Petition in the Bankruptcy Court, Louie's communicated with the Bankruptcy Trustee. *See,* **Exhibit CC,** a copy of Louie's letter to Bankruptcy Trustee.

92.     The Bankruptcy Trustee moved before the Court to re-open Shea's Bankruptcy. *See,* **Exhibit DD,** a copy of Bankruptcy Trustee's Motion to re-open Shea's bankruptcy matter.

93.     The Bankruptcy Court re-opened Shea's bankruptcy for the appointment of counsel to represent Shea in the Shea State Action and the Prior Federal Action. *See,* **Exhibit EE,** a copy of the Order opening bankruptcy case.

94.     As part of the application to the Bankruptcy Court to be retained by the Trustee to represent Shea, Brown submitted an Affidavit to the Bankruptcy Court. *See,* **Exhibit FF,** a copy

of the Affidavit of Jeffrey K. Brown, sworn to on the 29th day of August 2014 ("Brown Affidavit").

95.    Attached as an Exhibit to the Brown Affidavit is a copy of the retainer agreement executed by Shea and Brown. *See,* **Exhibit FF**.

96.    As part of P.C.'s retainer with Shea it states as part of Shea's duties and responsibilities, Shea was obligated to:

> remove any and all information under the CLIENT's control from any WebPages and or social networking programs including, but not limited to, Facebook, Twitter, and Myspace, that may adversely impact the CLIENT's case and or credibility....

**Exhibit FF.**

97.    Louie's demanded copies of information from Shea's Facebook page, but P.C. never disclosed the information. *See,* **Exhibit Z**, a copy of Louie's Notice of Discovery and Inspection upon Shea regarding her Facebook page.

98.    Picone demanded copies of information from Shea's Facebook page, but P.C. never disclosed the information. *See,* **Exhibit Z**.

99.    Guinnane demanded copies of information from Sh 's Facebook ge, but P.C. never disclosed the information. *See,* **Exhibit Z**.

### III.    CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR AIDING AND ABETTING A FRAUD AGAINST P.C.

100.    The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 99 as if fully set forth herein.

101.    Shea committed fraud upon Louie's when she commenced Shea's State Action.

102.    Shea committed fraud upon Louie's when she disclosed the False Diaries.

103.    Shea committed fraud upon Picone when she commenced Shea's State Action.

104.    Shea committed fraud upon Picone when she disclosed the False Diary.

105.    Shea committed fraud upon Guinnane when she commenced Shea's State Action.

106.    Shea committed fraud upon Guinnane when she disclosed the False Diary.

107.    P.C. had actual knowledge that Shea was committing fraud upon Louie's when she commenced Shea's State Action.

108.    P.C. had actual knowledge that Shea was committing fraud upon Louie's when she disclosed the False Diary.

109.    P.C. had actual knowledge that Shea was committing fraud upon Picone when she commenced Shea's State Action.

110.    P.C. had actual knowledge that Shea was committing fraud upon Picone when she disclosed the False Diary.

111.    P.C. had actual knowledge that Shea was committing fraud upon Guinnane when she commenced Shea's State Action.

112.    P.C. had actual knowledge that Shea was committing fraud upon Guinnane when she disclosed the False Diary.

14

113.    P.C. provided substantial assistance to advance Shea's commission of fraud against Louie's when it filed Shea's State Action.

114.    P.C. provided substantial assistance to advance Shea's commission of fraud against Picone when it filed Shea's State Action.

115.    P.C. provided substantial assistance to advance Shea's commission of fraud against Guinnane when it filed Shea's State Action.

116.    P.C. provided substantial assistance to advance Shea's commission of fraud against Louie's when it disclosed the False Diary in discovery in Shea's State Action.

117.    P.C. provided substantial assistance to advance Shea's commission of fraud against Picone when it disclosed the False Diary in discovery in Shea's State Action.

118.    P.C. provided substantial assistance to advance Shea's commission of fraud against Guinnane when it disclosed the False Diary in discovery in Shea's State Action.

119.    P.C. provided substantial assistance to advance Shea's commission of fraud against Louie's when it disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

120.    P.C. provided substantial assistance to advance Shea's commission of fraud against Picone when it disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

121.    P.C. provided substantial assistance to advance Shea's commission of fraud against Guinnane when it disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

122.    As a result of P.C.'s aiding the abetting Shea's fraud, Louie's has been damaged.

123.    As a result of P.C.'s aiding the abetting Shea's fraud, Picone has been damaged.

15

124. As a result of P.C.'s aiding the abetting Shea's fraud, Guinnane has been damaged.

125. Therefore, Louie's demands judgment against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

126. Therefore, Picone demands judgment against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

127. Therefore, Guinnane demands judgment against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

## AS AND FOR A SECOND CAUSE OF ACTION FOR
## AIDING AND ABETTING A FRAUD AGAINST BROWN

128. The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 127 as if fully set forth herein.

129. Shea committed fraud upon Louie's when she commenced Shea's State Action.

130. Shea committed fraud upon Louie's when she disclosed the False Diaries.

131. Shea committed fraud upon Picone when she commenced Shea's State Action.

132. Shea committed fraud upon Picone when she disclosed the False Diary.

16

133.    Shea committed fraud upon Guinnane when she commenced Shea's State Action.

134.    Shea committed fraud upon Guinnane when she disclosed the False Diary.

135.    Brown had actual knowledge that Shea was committing fraud upon Louie's when she commenced Shea's State Action.

136.    Brown had actual knowledge that Shea was committing fraud upon Louie's when she disclosed the False Diary.

137.    Brown had actual knowledge that Shea was committing fraud upon Picone when she commenced Shea's State Action.

138.    Brown had actual knowledge that Shea was committing fraud upon Picone when she disclosed the False Diary.

139.    Brown had actual knowledge that Shea was committing fraud upon Guinnane when she commenced Shea's State Action.

140.    Brown had actual knowledge that Shea was committing fraud upon Guinnane when she disclosed the False Diary.

141.    Brown provided substantial assistance to advance Shea's commission of fraud against Louie's when he filed Shea's State Action.

142.    Brown provided substantial assistance to advance Shea's commission of fraud against Picone when he filed Shea's State Action.

143.    Brown provided substantial assistance to advance Shea's commission of fraud against Guinnane when he filed Shea's State Action.

144.    Brown provided substantial assistance to advance Shea's commission of fraud against Louie's when he disclosed the False Diary in discovery in Shea's State Action.

145.    Brown provided substantial assistance to advance Shea's commission of fraud against Picone when he disclosed the False Diary in discovery in Shea's State Action.

146.    Brown provided substantial assistance to advance Shea's commission of fraud against Guinnane when he disclosed the False Diary in discovery in Shea's State Action.

147.    Brown provided substantial assistance to advance Shea's commission of fraud against Louie's when he disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

148.    Brown provided substantial assistance to advance Shea's commission of fraud against Picone when he disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

149.    Brown provided substantial assistance to advance Shea's commission of fraud against Guinnane when he disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

150.    As a result of Brown's aiding the abetting Shea's fraud, Louie's has been damaged.

151.    As a result of Brown's aiding the abetting Shea's fraud, Picone has been damaged.

152.    As a result of Brown's aiding the abetting Shea's fraud, Guinnane has been damaged.

153.    Therefore, Louie's demands judgment against Brown, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00),

plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

154.    Therefore, Picone demands judgment against Brown, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

155.    Therefore, Guinnane demands judgment against Brown, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

## AS AND FOR A THIRD CAUSE OF ACTION FOR
## AIDING AND ABETTING A FRAUD AGAINST LEEDS

156.    The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 155 as if fully set forth herein.

157.    Shea committed fraud upon Louie's when she commenced Shea's State Action.

158.    Shea committed fraud upon Louie's when she disclosed the False Diaries.

159.    Shea committed fraud upon Picone when she commenced Shea's State Action.

160.    Shea committed fraud upon Picone when she disclosed the False Diary.

161.    Shea committed fraud upon Guinnane when she commenced Shea's State Action.

162.    Shea committed fraud upon Guinnane when she disclosed the False Diary.

163.    Leeds had actual knowledge that Shea was committing fraud upon Louie's when she commenced Shea's State Action.

164.    Leeds had actual knowledge that Shea was committing fraud upon Louie's when she disclosed the False Diary.

165.    Leeds had actual knowledge that Shea was committing fraud upon Picone when she commenced Shea's State Action.

166.    Leeds had actual knowledge that Shea was committing fraud upon Picone when she disclosed the False Diary.

167.    Leeds had actual knowledge that Shea was committing fraud upon Guinnane when she commenced Shea's State Action.

168.    Leeds had actual knowledge that Shea was committing fraud upon Guinnane when she disclosed the False Diary.

169.    Leeds provided substantial assistance to advance Shea's commission of fraud against Louie's when he filed Shea's State Action.

170.    Leeds provided substantial assistance to advance Shea's commission of fraud against Picone when he filed Shea's State Action.

171.    Leeds provided substantial assistance to advance Shea's commission of fraud against Guinnane when he filed Shea's State Action.

172.    Leeds provided substantial assistance to advance Shea's commission of fraud against Louie's when he disclosed the False Diary in discovery in Shea's State Action.

173.    Leeds provided substantial assistance to advance Shea's commission of fraud against Picone when he disclosed the False Diary in discovery in Shea's State Action.

174. Leeds provided substantial assistance to advance Shea's commission of fraud against Guinnane when he disclosed the False Diary in discovery in Shea's State Action.

175. Leeds provided substantial assistance to advance Shea's commission of fraud against Louie's when he disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

176. Leeds provided substantial assistance to advance Shea's commission of fraud against Picone when he disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

177. Leeds provided substantial assistance to advance Shea's commission of fraud against Guinnane when he disclosed the Hours/Tips Diary in discovery in the Prior Federal Action.

178. As a result of Leeds' aiding the abetting Shea's fraud, Louie's has been damaged.

179. As a result of Leeds' aiding the abetting Shea's fraud, Picone has been damaged.

180. As a result of Leeds' aiding the abetting Shea's fraud, Guinnane has been damaged.

181. Therefore, Louie's demands judgment against Leeds, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

182. Therefore, Picone demands judgment against Leeds, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

183.    Therefore, Guinnane demands judgment against Leeds, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR
## VIOLATION OF N.Y. JUDICIARY LAW § 487 AGAINST BROWN AND P.C.

184.    The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 183 as if fully set forth herein.

185.    Brown is an attorney licensed to practice law in the State of New York.

186.    Brown deceitfully disclosed during discovery in Shea's State Action the False Diary.

187.    P.C. deceitfully disclosed during discovery in Shea's State Action the False Diary.

188.    Brown in collusion with Shea disclosed during discovery in Shea's State Action the False Diary.

189.    P.C. in collusion with Shea disclosed during discovery in Shea's State Action the False Diary.

190.    Brown, with the intent to deceive Louie's disclosed the False Diary in discovery in Shea's State Action.

191.    Brown, with the intent to deceive Picone disclosed the False Diary in discovery in Shea's State Action.

192.    Brown, with the intent to deceive Guinnane disclosed the False Diary in discovery in Shea's State Action.

22

193.    The Actual Knowledge Letter provided Brown with actual knowledge that the False Diary was an attempt to deceive Louie's in Shea's State Action. *See*, **Exhibit W**.

194.    The Actual Knowledge Letter provided P.C. with actual knowledge that the False Diary was an attempt to deceive Louie's in Shea's State Action. *See*, **Exhibit W**.

195.    The Actual Knowledge Letter provided Brown with actual knowledge that the False Diary was an attempt to deceive Picone in Shea's State Action. *See*, **Exhibit W**.

196.    The Actual Knowledge Letter provided P.C. with actual knowledge that the False Diary was an attempt to deceive Picone in Shea's State Action. *See*, **Exhibit W**.

197.    The Actual Knowledge Letter provided Brown with actual knowledge that the False Diary was an attempt to deceive Guinnane in Shea's State Action. *See*, **Exhibit W**.

198.    The Actual Knowledge Letter provided P.C. with actual knowledge that the False Diary was an attempt to deceive Guinnane in Shea's State Action. *See*, **Exhibit W**.

199.    Brown refused to withdraw Shea's State Action when he received the Actual Knowledge Letter.

200.    P.C. refused to withdraw Shea's State Action when it received the Actual Knowledge Letter.

201.    Only after Louie's was forced to file a Motion with the Court seeking the dismissal of Shea's State Action based upon fraud upon the Court, did Brown agree to withdraw Shea's State Action. *See*, **Exhibit X**. *See also*, **Exhibit Y**.

202.    Only after Picone was forced to file a Motion with the Court seeking the dismissal of Shea's State Action based upon fraud upon the Court, did Brown agree to withdraw Shea's State Action. *See*, **Exhibit X**. *See also*, **Exhibit Y**.

23

203.    Only after Guinnane was forced to file a Motion with the Court seeking the dismissal of Shea's State Action based upon fraud upon the Court, did Brown agree to withdraw Shea's State Action. *See,* **Exhibit X**. *See also,* **Exhibit Y**.

204.    Only after Louie's was forced to file a Motion with the Court seeking the dismissal of Shea's State Action based upon fraud upon the Court, did P.C. agree to withdraw Shea's State Action. *See,* **Exhibit X**. *See also,* **Exhibit Y**.

205.    Only after Picone was forced to file a Motion with the Court seeking the dismissal of Shea's State Action based upon fraud upon the Court, did P.C. agree to withdraw Shea's State Action. *See,* **Exhibit X**. *See also,* **Exhibit Y**.

206.    Only after Guinnane was forced to file a Motion with the Court seeking the dismissal of Shea's State Action based upon fraud upon the Court, did P.C. agree to withdraw Shea's State Action. *See,* **Exhibit X**. *See also,* **Exhibit Y**.

207.    As a result of Brown's deceit upon Louie's, Louie's incurred damages, including but not limited attorneys' fees incurred to draft the Motion in Shea's State Action seeking the dismissal of Shea's State Action based upon fraud upon the Court.

208.    As a result of Brown's deceit upon Picone, Picone incurred damages, including but not limited attorneys' fees incurred to draft the Motion in Shea's State Action seeking the dismissal of Shea's State Action based upon fraud upon the Court.

209.    As a result of Brown's deceit upon Guinnane, Guinnane incurred damages, including but not limited attorneys' fees incurred to draft the Motion in Shea's State Action seeking the dismissal of Shea's State Action based upon fraud upon the Court.

210.    As a result of P.C.'s deceit upon Louie's, Louie's incurred damages, including but not limited attorneys' fees incurred to draft the Motion in Shea's State Action seeking the dismissal of Shea's State Action based upon fraud upon the Court.

211. As a result of P.C.'s deceit upon Picone, Picone incurred damages, including but not limited attorneys' fees incurred to draft the Motion in Shea's State Action seeking the dismissal of Shea's State Action based upon fraud upon the Court.

212. As a result of P.C.'s deceit upon Guinnane, Guinnane incurred damages, including but not limited attorneys' fees incurred to draft the Motion in Shea's State Action seeking the dismissal of Shea's State Action based upon fraud upon the Court.

213. Accordingly, Louie's demands judgment against Brown and P.C. in an amount to be determined at trial, but not less than but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus statutory treble damages, plus attorneys' fees, costs, and interest.

214. Accordingly, Picone demands judgment against Brown and P.C. in an amount to be determined at trial, but not less than but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus statutory treble damages, plus attorneys' fees, costs, and interest.

215. Accordingly, Guinnane demands judgment against Brown and P.C. in an amount to be determined at trial, but not less than but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus statutory treble damages, plus attorneys' fees, costs, and interest.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR
## BREACH OF CONTRACT AGAINST P.C.

216. The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 215 as if fully set forth herein.

217. Louie's entered into a settlement agreement with P.C. settling the Mendez Action.

218. Picone entered into a settlement agreement with P.C. settling the Mendez Action.

219. Guinnane entered into a settlement agreement with P.C. settling the Mendez Action.

220.   The settlement agreement settling the Mendez Action is a contract.

221.   P.C. breached the settlement agreement when it failed to hold in escrow the settlement proceeds until the Court approved the settlement agreement.

222.   As a result of P.C.'s breach of the settlement agreement, Louie's has been damaged.

223.   As a result of P.C.'s breach of the settlement agreement, Picone has been damaged.

224.   As a result of P.C.'s breach of the settlement agreement, Guinnane has been damaged.

225.   Accordingly, Louie's demands judgment against P.C., in an amount to be determined at trial, but not less than SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS ($17,500.00), plus attorneys' fees, costs, and interest.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT AGAINST P.C.

226.   The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through and including 225 as if fully set forth herein.

227.   P.C. made a representation in the settlement agreement in the Mendez Action that "neither the firm nor any attorneys affiliated with the firm (individually, together or in conjunction with other attorneys) represent any other employee or former employee of the Company in connection with an employment-related issue against the Company or Releasees." **Exhibit C**, at ¶ 6.

228.    Just six days after the Court rejected the settlement agreement on May 1, 2013 (**Exhibit F**, P.C. filed three Consents To Join Collective Action To Recover Unpaid Wages on behalf of Shea (**Exhibit D**), Spagnuoli (**Exhibit D**) and Veselak (**Exhibit D**).

229.    Despite the language in the settlement agreement, P.C. made a material misrepresentation regarding their current representation of former employees of Louie's at the time of the Court approval of the settlement agreement.

230.    Despite the language in the settlement agreement, P.C. made a material misrepresentation regarding their current representation of former employees of Louie's at the time of the settlement agreement went into effect.

231.    At the time P.C. made the misrepresentation, P.C. knew it to be false.

232.    P.C. made the material misrepresentation to induce Louie's into settling the Mendez Action.

233.    P.C. made the material misrepresentation to induce Picone into settling the Mendez Action.

234.    P.C. made the material misrepresentation to induce Guinnane into settling the Mendez Action.

235.    Louie's justifiably relied upon P.C.'s representation to settle the Mendez Action.

236.    Picone justifiably relied upon P.C.'s representation to settle the Mendez Action.

237.    Guinnane justifiably relied upon P.C.'s representation to settle the Mendez Action.

238.    If Louie's knew that P.C. represented other former employees, it would never have settled the case nor paid any money to P.C. or Mendez.

239.    If Picone knew that P.C. represented other former Louie's employees, he would never have settled the case nor paid any money to P.C. or Mendez.

240.    If Guinnane knew that P.C. represented other former Louie's employees, he would never have settled the case nor paid any money to P.C. or Mendez.

241.    As a result of P.C.'s material misrepresentation, Louie's has been injured.

242.    As a result of P.C.'s material misrepresentation, Picone has been injured.

243.    As a result of P.C.'s material misrepresentation, Guinnane has been injured.

244.    Therefore, Louie's demands judgment against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

245.    Therefore, Picone demands judgment against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

246.    Therefore, Guinnane demands judgment against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendant as follows:

(a) On the First Cause of Action for aiding and abetting a fraud against P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), attorneys' fees, costs, and interest; and

(b) On the Second Cause of Action for aiding and abetting a fraud against Brown, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), attorneys' fees, costs, and interest; and

(c) On the Third Cause of Action for aiding and abetting a fraud against Leeds, in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), attorneys' fees, costs, and interest; and

(d) On the Fourth Cause of Action for violation of N.Y. Judiciary Law § 487 against Brown and P.C., in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus statutory treble damages, attorneys' fees, costs, and interest; and

(e) On the Fifth Cause of Action for breach of contract against P.C., in an amount to be determined at trial but not less than SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS ($17,500.00), plus attorneys' fees, costs, and interest; and

(f) On the Sixth Cause of Action for fraud in the inducement against P.C., in in an amount to be determined at trial, but not less than TWENTY FIVE THOUSAND DOLLARS ($25,000.00), plus punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), plus costs, attorneys' fees, and interest; and

on all causes of action, interest and costs, disbursements, and reasonable attorneys' fees incurred in bringing this Action and such other and further relief as may be just, proper, and equitable.

Dated:     Carle Place, New York
           June 12, 2015

Respectfully submitted,
THE SCHER LAW FIRM, LLP
*Attorneys for the Plaintiffs*

Austin Graff, Esq.
One Old Country Road, Suite 385
Carle Place, New York 11514
Telephone: (516) 746-5040

29

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
---------------------------------------------------------------X
LOUIE'S SEAFOOD RESTAURANT,
LLC, MARTIN PICONE, and MICHAEL
GUINNANE,

                                 Plaintiffs,

           -against-

JEFFREY BROWN, LENARD LEEDS, and
LEEDS BROWN LAW P.C.,

                              Defendants.
---------------------------------------------------------------X

**INDEX NO.** _____

**VERIFICATION**

STATE OF NEW YORK   )
                       )ss.:
COUNTY OF NASSAU   )

    **MARTIN PICONE,** being duly sworn, deposes and says:

        Deponent is a Plaintiff in the within action; deponent has read the foregoing **VERIFIED COMPLAINT** and knows the contents thereof; the same is true to deponent's own knowledge, except as to the matters therein alleged upon information and belief, and those matters deponent believes to be true.

                                           _____
                                          Martin Picone

Sworn to before me this
17 day of June 2015

_____
Notary Public